# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### (WESTERN DIVISION)

-----------------------------------------------------------------**X**

**NATHAN BROOKS, LARRY BARTLETT, MICHAEL LEMIEUX, EDUARDO ARANGO, RADOSLAW RUDSKI, and ARMAND GAMACHE, Individually and on Behalf of All Other Persons Similarly Situated,**

                              **Plaintiffs,**

            **v.**                                    **C.A. No. 07-CV-30164-MAP**

**HALSTED COMMUNICATIONS, LTD, HALSTED COMMUNICATIONS LLC, and KIRK HALSTED,**

                              **Defendants.**

-----------------------------------------------------------------

## CONSENT DECREE

IT IS HEREBY STIPULATED, by and between Plaintiffs Nathan Brooks ("Brooks"), Larry Bartlett ("Bartlett"), Michael Lemieux ("Lemieux"), Eduardo Arango ("Arango"), Radoslaw Rudski ("Rudski"), and Armand Gamache ("Gamache") and Defendants Halsted Communications, LTD, Halsted Communications LLC, and Kirk Halsted, that this collective action and class action is hereby compromised and settled pursuant to the terms and conditions set forth below in this CONSENT DECREE.

Defined Terms

1.      "Action" means the action entitled Nathan Brooks, et al. v. Halsted Communications, LTD, et al., C.A. No. 07-30164-MAP, pending in the United States District Court for the District of Massachusetts.

2.      "Class Period(s)," collectively means:

    a.   The "Massachusetts Class Period," which means the period from August 10, 2005 through the date of preliminary approval of this settlement;

    b.   The "New York Class Period," which means the period from March 19, 2004 through the date of preliminary approval of this settlement; and

    c.   The "FLSA Class Period," which means the period from August 10, 2005 through the date of preliminary approval of this settlement.

3.    "Class" or "Class Members" means, collectively, the New York Class Members, the Massachusetts Class Members, and the FLSA Plaintiffs, as those terms are defined below.

4.    "Complaint" means the Complaint filed in the Action on September 4, 2007, the First Amended Complaint filed in the Action on June 24, 2008, and the Second Amended Complaint filed on September 10, 2008.

5.    "Court" means the United States District Court for the District of Massachusetts.

6.    "Defendants" means Halsted Communications, LTD, Halsted Communications LLC, and Kirk Halsted.

7.    "Defendants' Counsel" means Jackson Lewis LLP.

8.    "Effective Date" means the later of (a) the date of final resolution of any appeal from the Settlement Order and Judgment; or (b) if no appeal is filed, the expiration of the period for filing of any such appeal.

9.    "Fee Award" means such award of fees as the Court may authorize to be paid to Plaintiffs' Counsel for the services they rendered to the Plaintiffs and the Settlement Class in the Action.

10.    "Final Approval" means that the Consent Decree and Judgment has been entered and the Court has awarded its Fee Award, Incentive Award, and Costs, if any.

11.    "Final Approval Hearing" means a hearing held before the Court to consider the Final Approval of the Settlement, the merits of any objections to the Consent Decree and to approve the terms of Consent Decree that shall enter.

12.    "FLSA Plaintiffs" means all individuals, other than Massachusetts Class Members, and New York Class Members, who filed a valid Opt-In Consent Form in the Action.

13.    "Incentive Awards" means such awards as the Court may authorize to be paid to the named Plaintiffs in recognition of their efforts in obtaining the benefits of the Consent Decree for the unnamed Settlement Beneficiaries.

14.    "Massachusetts Class Member(s)" or "Massachusetts Class" means all individuals who were employed by Halsted Communications, LTD at any time during the period from August 10, 2005 through the date of preliminary approval of this settlement as a Satellite Technician within the Commonwealth of Massachusetts.

15.    "New York Class Member(s)" or "New York Class" means all individuals who were employed by Halsted Communications, LTD at any time during the period from March 19, 2004 through the date of preliminary approval of this settlement as a Satellite Technician within the State of New York.

16.    "Objection Deadline" means [45 days after notice sent], 2010.

17.    "Opt-Out Deadline" means [45 days after notice sent], 2010.

18.    "Out-of-Pocket Costs" or "Costs" means:

    a. all reasonable costs and expenses incurred by Plaintiffs' Counsel in prosecuting the Action; and

    b. the fees and costs of the Settlement Administrator (including taxes due on interest earned by the Settlement Fund).

19.     "Parties" means Plaintiffs Nathan Brooks, Larry Bartlett, Michael Lemieux, Eduardo Arango, Radoslaw Rudski, and Armand Gamache and Defendants Halsted Communications, LTD, Halsted Communications LLC, and Kirk Halsted.

20.     "Plaintiffs" means Nathan Brooks, Larry Bartlett, Michael Lemieux, Eduardo Arango, Radoslaw Rudski, and Armand Gamache.

21.     "Plaintiffs' Counsel" means Donohue, Hyland & Donohue P.C. and Heisler, Feldman, McCormick & Garrow, P.C.

22.     "Preliminary Approval" means that the Court has entered an Order substantially in the form attached hereto as Exhibit B, preliminarily approving the terms and conditions of this Consent Decree, including the manner of providing notice to the Massachusetts Class Members, New York Class Members, and the FLSA Plaintiffs and the administration of the Settlement.

23.     "Released Claims" means all claims, demands, rights, liabilities, and causes of action, based on any conduct alleged or damages allegedly incurred from September 4, 2001 through the date of preliminary approval of this settlement, that were alleged, or which could have been alleged in the Complaint, and that existed as of the date of preliminary approval or prior thereto, whether known or unknown, asserted or that might have been asserted, for violations of Massachusetts or New York wage and hour laws or the Fair Labor Standards Act ("FLSA"), whether for economic damages, noneconomic damages, restitution, penalties, liquidated damages, interest, attorneys' fees, or costs against Defendants, and their respective past, present and future parent companies, subsidiaries, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns and insurers.  The Massachusetts Class Members, New York Class Members

and the FLSA Plaintiffs stipulate and agree that upon the Effective Date, they shall be deemed to have, and by operation of the Consent Decree and Judgment shall have, expressly waived and relinquished, to the full extent permitted by law, any Released Claims.

24.     "Settlement" means the terms and conditions set forth in this Consent Decree.

25.     "Settlement Administrator" means Simpluris, Inc., P.O. Box 679560, Orlando, Florida 32867-9560; provided, the identity of the Settlement Administrator may be changed with the consent of the Parties.

26.     "Settlement Award" means the amount that a Settlement Beneficiary is entitled to receive from the Settlement Fund after deduction of all Out-of-Pocket Costs, Fee Award, and Incentive Award authorized by the Court.

27.     "Settlement Beneficiaries" means:

   a.  Plaintiffs; and

   b.  All other Massachusetts Class Members, New York Class Members, or FLSA Plaintiffs who do not opt out of the Settlement in the manner provided in this Stipulation.

28.     "Settlement Fund" means the Two Million Nine Hundred Thousand Dollars ($2,900,000.00) to be paid by Defendants pursuant to the terms of this Consent Decree, plus any interest earned on this amount following the date of payment.

29.     "Settlement Notice" means a notice to the FLSA Plaintiffs, Massachusetts Class Members, and New York Class Members describing the Settlement, including its application and effect, the amounts of any proposed Incentive Award and Fee Award, and the opportunity to object or opt-out of the Consent Decree, substantially in the form as Exhibit A attached hereto or in such other form as may be approved by the Court.  Each Settlement Notice shall include for

each FLSA Plaintiff, Massachusetts Class Member, and New York Class Member, their dates of employment, state(s) in which they worked during the applicable Class Period, and estimated Settlement Award based on the information provided by Defendants to Plaintiffs' Counsel, and directing them to contact the Settlement Administrator to challenge any inaccuracies with respect to that information.

30.     "Settlement Order and Judgment" means an order and judgment issued by the Court, in substantially the form attached hereto as Exhibit C, approving the Consent Decree as binding upon the Parties and the Settlement Beneficiaries and dismissing the Complaint with prejudice.

31.      "Consent Decree" means this Consent Decree.

Procedural History

32.     This Action is a collective and class action seeking compensation, including but not limited to alleged unpaid overtime, under various Massachusetts and New York wage and hour laws, and the Fair Labor Standards Act ("FLSA").

33.     With regard to Plaintiff's overtime claims, this case primarily concerns the application of the motor carrier exemption under the FLSA, which makes the overtime provision of the FLSA inapplicable to those employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act [of] 1935." 29 U.S.C. § 213(b)(1).  As a result, the litigation has centered primarily on the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Pub. L. No. 109-59, 119 Stat 1144, which became effective on August 10, 2005, and the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), Pub. L. No. 110-244, 122 Stat. 1572 (2008), which became effective June

6, 2008, because those laws amended the scope of the jurisdiction of the Secretary of Transportation.  Defendants have denied Plaintiffs' claims and have raised various factual and legal defenses to those claims, and have agreed to the Settlement without any admission of wrongdoing.

34.     The Parties undertook extensive discovery, which included service of and responses to interrogatories, production of documents, requests for admissions, depositions, and a detailed analysis of payroll information.  As of the date of this Settlement, discovery was ongoing.

35.     In May 2008, Notice was mailed to all Satellite Technicians who were employed by Halsted from August 10, 2005, notifying them of the lawsuit and their ability to opt into the lawsuit and assert overtime claims under the FLSA against Halsted.  Seven hundred and forty-eight people (748), including the Plaintiffs, opted in to the lawsuit by filing an Opt-In Consent Form in the Action.  After extensive discovery and briefing, on May 26, 2009, the Court entered summary judgment for the Plaintiffs on the issue of the applicability of the motor carrier act exemption under the FLSA for the time period from August 10, 2006 forward, and granted summary judgment for the Defendants on this issue under New York law for the time periods from August 10, 2005 to August 10, 2006 and from March 13, 2007 forward.

Stipulation for Class Certification

36.     The Parties stipulate and agree to the certification of the Massachusetts Class and New York Class for purposes of this settlement only.  Should this Consent Decree not become final, such stipulation to class certification as part of the Consent Decree shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

Defendants expressly reserve their right to oppose class certification should this settlement not become final.

<u>Inadmissibility of Consent Decree</u>

37.     Except for purposes of settling this Action pursuant to the terms of this Consent Decree, neither the Settlement, nor any of its terms, nor any document, statement, proceeding or conduct related to this Consent Decree, nor any reports or accounts thereof, shall in any event be:

      a.   Construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage; or

      b.   Disclosed, referred to or offered or received in evidence against any of the Parties, in any further proceeding in this Action, or any other civil, criminal or administrative action or proceeding, except for purposes of settling this Action pursuant to the terms of this Consent Decree or enforcing the terms of this Consent Decree.

<u>Investigation in the Class Action</u>

38.     The Parties have conducted substantial investigation of the facts and law relevant to Plaintiffs' claims and Defendants' defenses, including a detailed analysis of payroll records, and the procedural and substantive aspects of applicable federal and state laws.  The Parties have researched and briefed numerous legal issues pertaining to liability and damages in this Action. In doing so, counsel for the Parties have investigated the applicable law as applied to the facts discovered regarding the claims of the Plaintiffs and the Classes, any defenses thereto, and the damages claimed by the Plaintiffs and the Classes.

<u>Benefits of Settlement to the Settlement Beneficiaries</u>

39.     Plaintiffs have considered the expense and length of the proceedings that would be necessary to continue the Action against the Defendants through trial.  Plaintiffs have also taken into account the uncertainty and risk of further litigation, unresolved substantive legal issues, and the difficulties and delays inherent in such litigation, including the ability to collect any damages, including liquidated damages.  Based on the foregoing, Plaintiffs have determined that the Settlement set forth in this Consent Decree is fair, adequate and reasonable, and is in the best interests of the Settlement Beneficiaries.

40.     Should this Settlement not be finally approved by the Court, neither this Consent Decree nor any documents referred to herein, nor any action taken to carry out this Settlement is, or may be construed or used as, an admission by or against the Plaintiffs or Defendants as to the merits or lack thereof of the claims asserted by the Plaintiffs or the defenses asserted by Defendants.

<u>Plaintiffs' Claims</u>

41.     Plaintiffs have claimed and continue to claim that the Released Claims have merit and give rise to Defendants' liability.  Should this Consent Decree not be finally approved by the Court, neither this Consent Decree nor any documents referred to herein, nor any action taken to carry out this settlement may be construed or used as, an admission by or against the Plaintiffs as to the merits or lack thereof of the claims asserted by the Plaintiffs.

<u>Defendants' Denial of Wrongdoing</u>

42.     Defendants have denied and continue to deny each of the claims alleged by the Plaintiffs in the Action.  Defendants deny any legal liability arising out of any of the facts or conduct alleged in the Action and believe that they have valid defenses to Plaintiffs' claims, and

that their conduct was not willful with respect to any alleged failure to pay any wages, and that they acted in good faith at all relevant times. Except for purposes of this settlement, neither this Consent Decree, nor any document referred to herein, nor any action taken to carry out this Consent Decree, may be in any way used as an admission, concession or indication by or against Defendants of any fault, wrongdoing or liability whatsoever, including any concession that certification of a class other than for the purposes of this settlement would be appropriate in this or any other case.

Releases by Settlement Beneficiaries

43.     All Settlement Beneficiaries stipulate and agree that, upon the Effective Date and completion of payment by Defendants, they shall be deemed to have, and by operation of the Settlement Order and Judgment shall have, expressly waived and relinquished the Released Claims.

44.     All Settlement Beneficiaries agree not to sue or otherwise assert any of the Released Claims against Defendants, and their respective past, present and future parent companies, subsidiaries, affiliates, divisions, agents, employees, owners, members, officers, directors, partners, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns and insurers. The Settlement Awards shall be paid to the Settlement Beneficiaries specifically in exchange for the release of the Defendants from the Released Claims and for the covenant not to sue concerning the Released Claims. Even if Settlement Beneficiaries should hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released Claims, upon the Effective Date and completion of payment by the Defendants, they shall be deemed to have, and by operation of the Settlement Order and

Judgment shall have, fully, finally and forever settled and released the Released Claims, whether such claims were known or unknown, suspected or unsuspected, contingent or noncontingent, or then existed or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery of or existence of such different or additional facts.

Prior Releases

45.     No claim of any Settlement Beneficiary under this Settlement shall be barred or limited by reason of any release or waiver of any kind previously executed by him or her relating to compensation paid or allegedly owed to such Settlement Beneficiary by reason of any work performed during the Class Period.  Defendants believe that any such releases and/or waivers executed by its former employees are valid and enforceable, and Defendants' agreement as part of this Settlement to allow Settlement Beneficiaries who have previously released or waived claims against the Defendants to make a claim under this Settlement does not affect the validity of any other release or waiver to which the Defendants are a party.  Nothing in this paragraph may otherwise be used in any way against the Defendants.

Settlement Payments by Defendants

46.     Defendants will pay the Settlement Fund ($2,900,000.00) as follows:  within three days following Final Approval or on July 1, 2010, whichever is later, and in full settlement of the claims asserted in the Action, Defendants' Counsel will cause to be paid to the Settlement Administrator the $2,900,000.00.  The Settlement Fund in this Action has five components: (1) the Settlement Awards; (2) such Incentive Awards for the Plaintiffs as the Court may allow in a maximum amount as follows: $15,000.00 to Plaintiff Nathan Brooks, $15,000.00 to Plaintiff

Larry Bartlett, $15,000.00 to Plaintiff Michael Lemiuex, $7,500.00.00 to Plaintiff Eduardo Arango, $7,500.00 to Plaintiff Radoslaw Rudski, $10,000.00 to Plaintiff Armand Gamache, and $10,000 to Plaintiff Daniel Slosek; (3) such Fee Award to Plaintiffs' Counsel as the Court may allow in a maximum amount of $966,666.66; (4) such reimbursements of Costs of Plaintiffs' Counsel and the Settlement Administrator as the Court may allow in a maximum amount of $55,000.00; and (5) such amounts as may be paid as a cy pres award pursuant to paragraph 64 or as otherwise ordered by the Court.

47.      No person shall have any claim against Defendants, Defendants' Counsel, Plaintiffs, the Class Members, or Plaintiffs' Counsel with respect to any payment made in accordance with this Consent Decree or as otherwise directed by the Court.

Creation and Operation of the Settlement Fund

48.      The Settlement Administrator shall hold the Settlement Fund in escrow until distribution as provided in the Consent Decree and Judgment.  The Settlement Fund shall be invested in instruments backed by the full faith and credit of the United States Government or an agency thereof or in money funds investing solely in short-term United States Government obligations, and shall so reinvest the proceeds of those instruments as they mature.  The Settlement Fund shall be held in trust by the Settlement Administrator for the benefit of the Plaintiffs.  Any tax liability arising out of the interest earned by the Settlement Fund shall be considered a liability of, and shall be paid entirely from, the Settlement Fund.

Notice of Consent Decree and Settlement Implementation

49.      As part of this Consent Decree, the Parties agree to the following procedures for obtaining Preliminary Approval of the settlement, certifying the Massachusetts Class, New York Class, and notifying the FLSA Plaintiffs, Massachusetts Class Members, and New York Class

Members:

a.  Preliminary Settlement Hearing.   In advance of a hearing for Preliminary Approval of the Settlement, the Parties will submit to the Court this Consent Decree, together with the exhibits attached hereto, and any other documents necessary to implement the Settlement.

b.  Certification of the Massachusetts Class and New York Class.  Simultaneous with the filing of the Consent Decree and solely for purposes of this settlement, Counsel for the Parties will request the Court to enter a Preliminary Approval Order, substantially in the form of Exhibit B attached hereto, preliminarily approving the proposed Consent Decree, certifying the Massachusetts Class, certifying the New York Class, directing notice to the Massachusetts Class Members, New York Class Members, and the FLSA Plaintiffs of their opportunity to participate in, opt out of, and/or object to the settlement, setting forth the Objection, Opt-Out and/or Participation Deadlines, and setting a date for the Final Approval Hearing.  The Preliminary Approval Order shall provide for notice of the settlement and related matters to be sent to the Massachusetts Class Members, New York Class Members, and the FLSA Plaintiffs as specified therein.

c.  Notice.  Pursuant to the terms of the Preliminary Approval Order, the Settlement Administrator shall mail the Settlement Notice to the Massachusetts Class, New York Class, and the FLSA Plaintiffs.

d.  The Parties agree to the following procedures regarding notice of the Consent Decree to the Massachusetts Class, New York Class, and the FLSA Plaintiffs:

e.   Within five (5) business days after entry of the Preliminary Approval Order, Plaintiffs' Counsel in cooperation with Defendants' Counsel will provide the Settlement Administrator with a list setting forth the name, dates of employment, and state(s) worked in during the applicable Class Period for each Settlement Beneficiary.

f.   Within five (5) business days after entry of the Preliminary Approval Order, Defendants shall provide the Settlement Beneficiaries' social security numbers to the Settlement Administrator.

g.   Within ten (10) business days after entry of the Preliminary Approval Order, the Settlement Administrator shall send copies of the Notice approved by the Court in its Preliminary Approval Order to all Massachusetts Class Members, New York Class Members, and FLSA Plaintiffs, via first class regular U.S. mail, using the most current mailing address available in the Parties' possession.  The Notice shall include instructions on how a Massachusetts Class Member, New York Class Member, or FLSA Plaintiff may object to the Settlement, the procedure for opting out of the Settlement, the procedure by which the Settlement Fund will be distributed, and the amounts to be sought as Incentive Awards, Costs, and a Fee Award.  The Settlement Notice shall also include for each FLSA Plaintiff, Massachusetts Class Member, and New York Class Member, their dates of employment, state(s) they worked in during the applicable Class Period, according to Defendants' records, estimated Settlement Award, and instructions on how to challenge any alleged inaccuracies with respect to that information by contacting the Settlement Administrator.

h. Any Notices returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within seven (7) days following receipt of the returned mail.  If any Notice is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address (for example, by using the Lexis-Nexis "Accurint" database), and shall promptly re-mail the Settlement Notices to any newly found addresses.

<u>Procedure for Objecting to the Settlement</u>

50. The Settlement Notice shall provide that Massachusetts Class Members, New York Class Members, or FLSA Plaintiffs who wish to object to the Settlement must file with the Court and serve on counsel for the Parties a written statement objecting to the Consent Decree. Such written statement and all supporting briefs or other materials must be filed with the Court and served on counsel for the Parties no later than the Objection Deadline.  Any Objector to the settlement must appear at the Final Approval Hearing for the Court to consider his or her objection.  No person shall be entitled to be heard at the Final Approval Hearing (whether individually or through separate counsel) or to object to the Consent Decree, and no written objections or briefs submitted by any person shall be received or considered by the Court at the Final Approval Hearing, unless such written statement of objections and supporting materials are timely filed and served as set forth herein.  Persons who fail to file and serve timely written objections in the manner specified above shall be deemed to have waived any objections and shall be foreclosed from making any objection (whether by appeal or otherwise) to the Settlement.  Only persons who are Massachusetts Class Members, New York Class Members, or FLSA Plaintiffs may object to the Settlement.

Procedures for Opting Out of the terms of the Consent Decree

51.     The Notice shall provide that Massachusetts Class Members, New York Class Members, or FLSA Plaintiffs who wish to opt out of the Consent Decree must send to the Settlement Administrator a written statement indicating that they do not wish to participate, or be bound by the Consent Decree.   Such written statement must be mailed to the Settlement Administrator and postmarked by the Opt-Out Deadline, or, if transmitted by another medium, it must be received by the Settlement Administrator no later than the Opt-Out Deadline.   The Settlement Administrator shall provide copies of any opt-out request received to the Parties' Counsel within ten (10) days of receipt of such requests.   Persons who fail to provide such written statement in a timely manner will be permitted to opt-out only if they can demonstrate good cause for the delay to the satisfaction of the Parties.   If the Parties dispute whether good cause has been demonstrated, the dispute shall be resolved by the Court.

Calculation and Distribution of Settlement Awards

52.     The Parties agree that the calculation and distribution of Settlement Awards to the Plaintiffs and the Settlement Beneficiaries as provided herein are designed to equitably compensate such persons relative to their claims for unpaid compensation against Defendants.

53.     The Settlement Administrator shall disburse from the Settlement Fund and the amount of each Settlement Award in accordance with the methodology set forth in this Consent Decree and any orders of the Court.

54.     The Settlement Award to which each Settlement Beneficiary is entitled will be determined on a pro rata basis based on the Settlement Fund, the average number of hours worked by Technicians in each of the various classes, the number of workweeks that each Technician was employed during the applicable Class Period and the possibility of multiple

and/or liquidated damages for the various classes. The FLSA allows for the possibility of liquidated damages, Massachusetts law allows for the possibility of treble damages, and there is no liquidated or multiple damages under New York law. The Settlement Award to the FLSA Plaintiffs also takes into account the Safe Harbor provision contained in the SAFETEA-LU Technical Corrections Act, which reduces overtime damages to such Plaintiffs. Ten percent (10%) of the Settlement Fund will be allocated to the Massachusetts Class Members and New York Class Members for all state law claims other than overtime claims. The remaining portion of the Settlement Fund (90%) will be allocated to the FLSA Plaintiffs Massachusetts Class Members and New York Class Members for overtime claims.

55. Based upon the foregoing factors:

a. **<u>Massachusetts Class Members and New York Class Members</u>**: To calculate awards for Massachusetts Class Members and New York Class Members who worked during their respective Class Periods for state law claims other than overtime claims, the Settlement Administrator will divide the number of workweeks worked for each of the Massachusetts Class Members and New York Class Members by the total number of workweeks for all Massachusetts Class Members and New York Class Members during the relevant Class Period to determine each Massachusetts Class Member's and New York Class Member's Percentage Share. Each of the Massachusetts Class Members and New York Class Members shall receive a Settlement Award equal to his or her Percentage Share multiplied by ten percent (10%) of the Settlement Fund remaining after payment of any Out-of-Pocket Costs, Fee Awards, and Incentive Awards approved by the Court.

b. **FLSA Plaintiffs**:  Potential damages for FLSA Plaintiffs who worked between August 10, 2005 and August 10, 2006 shall be discounted in light of the potential defenses available to Defendants regarding the applicability of the safe harbor provision of the SAFETEA-LU Technical Corrections Act of 2008.  To calculate awards for FLSA Plaintiffs, the total number of weeks worked between August 10, 2006 and March 3, 2008 shall be multiplied by nine giving each FLSA Plaintiff his or her total allocated workweeks.  The multiplier is based on the average number of overtime hours worked by FLSA Plaintiffs (6 hours) and the possibility of liquidated damages under the FLSA (1.5).  The Settlement Administrator will then divide the number of allocated workweeks for each Settlement Beneficiary by the total number of allocated workweeks for all Settlement Beneficiaries to determine each Settlement Beneficiary's Percentage Share.  Each Settlement Beneficiary shall be entitled to a Settlement Award equal to his or her Percentage Share multiplied by the portion of the Settlement Fund remaining after payment of any Out-of-Pocket Costs, Fee Awards, and Incentive Awards approved by the Court.

c. **Massachusetts Class Members**:  each week worked by the Massachusetts Class Members between August 10, 2005 and March 3, 2008 shall be counted because it is unclear whether SAFETEA-LU or its safe harbor provision applies under Massachusetts law.  Each week worked by the Massachusetts Plaintiffs between August 10, 2005 and March 3, 2008 shall be allocated a multiplier of five giving each Massachusetts Class Member his or her total allocated workweeks.  The multiplier is based on the average number of overtime hours worked by

Massachusetts Plaintiffs (2 hours) and the possibility of multiple damages under Massachusetts law and the possibility of prevailing on other claims asserted in light of defendant's defenses (2.5).  The Settlement Administrator will then divide the number of allocated workweeks for each Settlement Beneficiary by the total number of allocated workweeks for all Settlement Beneficiaries to determine each Settlement Beneficiary's Percentage Share.  Each Settlement Beneficiary shall be entitled to a Settlement Award equal to his or her Percentage Share multiplied by the portion of the Settlement Fund remaining after payment of any Out-of-Pocket Costs, Fee Awards, and Incentive Awards approved by the Court.

d. **New York Class Members**:   each week worked by the New York Class Members between August 10, 2005 and March 3, 2008 shall be counted because it is unclear whether SAFETEA-LU or its safe harbor provision applies under New York law.   Each week worked by the New York Plaintiffs between August 10, 2005 and March 3, 2008 shall be allocated a multiplier of six giving each New York Class Member his or her total allocated workweeks.  The multiplier is based on the average number of overtime hours worked by New York Plaintiffs (6 hours) and no multiple or liquidated damages under New York law and factors in the possibility of prevailing on other claims asserted in light of defendant's defenses.  The Settlement Administrator will then divide the number of allocated workweeks for each Settlement Beneficiary by the total number of allocated workweeks for all Settlement Beneficiaries to determine each Settlement Beneficiary's Percentage Share.  Each Settlement Beneficiary shall be entitled to a Settlement Award equal to his or her Percentage Share multiplied by the portion

of the Settlement Fund remaining after payment of any Out-of-Pocket Costs, Fee Awards, and Incentive Awards approved by the Court.

e. **The Calculation**:  The Settlement Administrator will determine the workweeks worked by each Settlement Beneficiary and the allocated workweeks during the applicable Class Period from the dates of employment.  In order to do so, Defendants' Counsel will provide Plaintiffs' Counsel the dates of employment and locations worked for each Settlement Beneficiary.  Each Settlement Beneficiary shall be entitled to a Settlement Award equal to his or her Percentage Share multiplied by ninety percent (90%) of the Settlement Fund remaining after payment of any Costs, Fee Awards, and Incentive Awards approved by the Court.

Settlement Beneficiaries' Share of Taxes

56.    It shall be the responsibility of the Settlement Administrator to withhold from the Settlement Awards payable to the Settlement Beneficiaries, each Settlement Beneficiary's share of all federal, state and local income and employment taxes required to be withheld under the law, to prepare and deliver the necessary tax documentation for signatures by all necessary parties, and to cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.  The parties shall be held harmless for any error in such calculation or in its administration by the Settlement Administrator.

57.    Payments under this Stipulation shall be treated in the following manner:

a. The Settlement Awards to the FLSA Class Members and Massachusetts Class Members shall be treated as shall be treated as fifty percent wages and fifty percent nonwage income (liquidated damages) and shall be reported on IRS Form W-2 and Form 1099, respectively for tax year 2010 ("Wage Damage Award").

    b.   The Settlement Awards to New York Class Members shall be treated as taxable wage income.

    c.   The Incentive Payments shall be treated as non-wage income for tax year 2010, and shall be reported on IRS Form 1099.

58.    Each Settlement Beneficiary's share of all applicable federal, state, and local income and employment taxes withheld and deposited with the applicable governmental authorities in accordance with this Consent Decree ("Employee Taxes") shall be part of, and paid out of, the Settlement Award to each Settlement Beneficiary.

59.    All fees, expenses and costs of the Settlement Administrator incurred in connection with the implementation of this Stipulation (including mailing and distribution costs) shall be paid out of the Settlement Fund as Costs in the manner approved by the Court.

Reporting Obligations of the Settlement Administrator

60.    The Parties agree that the scope of the Settlement Administrator's duties shall include making timely, periodic reports to the Parties accounting for monies in the Settlement Fund (including all contributions, disbursements, and tax withholdings) and the participation status of Class Members.

Employer's Share of Statutory FICA, FUTA and State Withholdings

61.    In addition to the payments described above, Defendants shall bear responsibility for the employer's share of all taxes arising from Wage Damage Awards paid to the Settlement Beneficiaries ("Employer's Taxes"). The parties agree to hold each other harmless for any failure to pay their share of taxes.

Out-of-Pocket Costs, Fee Award, and Incentive Award

62.    Before computing the amounts of any Settlement Awards to be paid to Settlement

Beneficiaries, any Fee Award, Incentive Award, and Costs authorized by the Court shall be computed by Plaintiffs' Counsel.  Plaintiffs' Counsel will petition the Court to award amounts not exceeding the following, all of which shall be paid from the Settlement Fund:

    a.  Fee Award:  $966,666.66.

    b.  Incentive Awards:  payable to each of the Plaintiffs as follows: $15,000.00 to Plaintiff Nathan Brooks, $15,000.00 to Plaintiff Larry Bartlett, $15,000.00 to Plaintiff Michael Lemiuex, $7,500.00 to Plaintiff Eduardo Arango, $7,500.00 to Plaintiff Radoslaw Rudski, $10,000.00 to Plaintiff Armand Gamache, and $10,000 to Daniel Slosek.

    c.  Costs:  All reasonable expenses of Plaintiffs' Counsel not to exceed $55,000.00; and fees and expenses of the Settlement Administrator not to exceed $30,000.00.

63.    Defendants agree that they will not object to the foregoing proposed Fee Award, Incentive Award, or Costs.

Unclaimed Settlement Awards

64.    The Parties agree that, should the total of the Settlement Awards, Fee Award, Incentive Award, and Costs be less than the amount of the Settlement Fund, any funds remaining in the Settlement Fund shall be paid as a cy pres award to organization(s) of the Plaintiffs' choice to further workers' rights.  Defendants reserve the right not to have their name(s) associated with any cy pres award.

Questions and Disputes

65.    In the event that questions or disputes arise regarding the entitlements of the Plaintiffs or any Settlement Beneficiary under this Consent Decree, the Parties shall provide to each other and/or the Court all available information reasonably necessary in order to allow the

Parties or the Court to resolve them.

No Retaliation by Defendants

66.     Defendants shall not take any adverse employment action against the Plaintiffs or any Class Member because any of them (a) instituted or in any way participated in this Action, or (b) elects or indicates an intention to object to or opt out of the Settlement memorialized in this Stipulation or any order entered by the Court approving its terms.   Nothing herein, however, shall prevent Halsted from appropriately addressing any legitimate workplace concerns regarding Plaintiffs or Class Members.

Defendants' Legal Fees

67.     All of Defendants' own legal fees, costs, and expenses in this Action shall be borne by Defendants.

Final Settlement Approval Hearing & Entry of Consent Decree and Judgment

68.     Following the Objection and Opt-Out Deadlines, the Parties will ask the Court to conduct a Final Approval Hearing to consider Final Approval of the Settlement.   Upon Final Approval of the Settlement by the Court, at or after such hearing, the Parties shall present the Settlement Order and Judgment to the Court for its approval and entry.

Procedure for Payment of Monies from Settlement Fund

69.     After the Effective Date, and solely for purposes of this Consent Decree, the Settlement Awards shall be distributed in the following manner:

   a.  Any Fee Award, Costs, or Incentive Awards authorized by the Court shall be paid from the Settlement Fund within ten (10) days following the Effective Date.

   b.  Within ten (10) days of the Effective Date, the Settlement Administrator shall issue and mail Settlement Award checks, less deductions authorized pursuant to

paragraphs 56-58 of this Consent Decree.

c. Settlement Award checks shall be mailed via first class U.S. mail, to the respective Settlement Beneficiaries using the most current mailing address available to the Settlement Administrator.

d. Checks paid to the Settlement Beneficiaries shall remain valid and negotiable for one hundred twenty (120) days from the date of their issuance and will thereafter automatically be cancelled if not negotiated within that time. In such event, the Settlement Beneficiary's claim will be deemed null and void and of no further force and effect and the funds represented by such check shall be distributed pursuant to paragraph 64.

70. If any disputes arise regarding eligibility for any Settlement Awards under the terms of this Consent Decree, the Parties shall use their best efforts to resolve them. In the absence of such resolution, the Court shall resolve such disputes.

Administration Costs

71. The Parties agree to cooperate in the Settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement.

Nullification of the Consent Decree

72. In the event: (i) the Court does not finally approve the Consent Decree as provided herein; (ii) the Court does not enter the Consent Decree and Judgment as provided herein which becomes final as a result of the occurrence of the Effective Date; or (iii) the Consent Decree does not become final for any other reason, this Consent Decree shall be null and void *ab initio* and any order or judgment entered by the Court in furtherance of this Consent

Decree shall be treated as withdrawn or vacated by stipulation of the Parties.  In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Consent Decree, and the Parties shall proceed in all respects as if it had not been executed.  In the event an appeal is filed from the Consent Decree and Judgment, or any other appellate review is sought prior to the Effective Date, administration of the Settlement may be stayed pending final resolution of the appeal or other appellate review.

73.     Defendants may elect to withdraw from all payment and other obligations of this Consent Decree if more than 10% of the Class Members opt-out within the time period set forth in the Notice of Settlement.  All signatories and their counsel agree that they will not encourage opt-outs.  Plaintiffs' counsel specifically agrees not to solicit opt-outs, directly or indirectly, through any means.  In the event that Defendants elect to withdraw from all payment and other obligations of this Consent Decree pursuant to the terms above, no party may use the fact that the parties agreed to settle this case as evidence of Defendants' liability in this lawsuit or the lack thereof.

Notification and Certification by Settlement Administrator

74.     Following payment of the Settlement Awards, the Settlement Administrator shall provide a written certification of such payments to counsel for the Parties, which will thereafter be filed by Plaintiffs' Counsel with the Court.

Computation of Time

75.     For purposes of this Consent Decree, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by Fed. R. Civ. P. 6(a)(4)), such time period shall be continued to the following business day.

Exhibits and Headings

76.    This Consent Decree includes both the terms set forth in this Consent Decree herein and the attached Exhibit A through Exhibit C, which are incorporated by reference as though fully set forth herein.  All exhibits to this Consent Decree are an integral part of the Settlement.  The descriptive headings of any paragraphs or sections of this Consent Decree are inserted for convenience of reference only and do not constitute a part of this Consent Decree.

Interim Stay of Proceedings

77.    The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the settlement and execute the Consent Decree.

Amendment or Modification

78.    This Consent Decree may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

Entire Consent Decree

79.    This Consent Decree and the attached exhibits constitute the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Consent Decree or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.   All prior or contemporaneous   negotiations,   Consent   Decrees,   agreements,   understandings,   and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect.  Each of the Parties acknowledges that it has not relied on any promise, representation or warranty, express or implied, not contained in this Consent Decree.

Authorization to Enter Into Consent Decree

80.     Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Consent Decree and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Consent Decree to effectuate its terms, and to execute any other documents required to effectuate the terms of this Stipulation.  The Parties agree that they and their counsel will cooperate with each other and to use their best efforts to effect the implementation of the Consent Decree. In the event the Parties are unable to reach resolution on the form or content of any document needed to implement the Consent Decree, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Consent Decree, the Parties shall seek the assistance of the Court to resolve such disagreement.

Binding on Successors and Assigns

81.     This Consent Decree shall be binding upon, and inure to the benefit of the heirs, beneficiaries, successors or assigns of Plaintiffs, Defendants, and the Settlement Beneficiaries.

Governing Law

82.     All terms of this Consent Decree and the exhibits hereto shall be governed by and interpreted according to the Federal Rules of Civil Procedure, where applicable, or the laws of the Commonwealth of Massachusetts, without regard to its principles of conflict of laws.

Counterparts

83.     This Consent Decree may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Consent Decree shall exchange among themselves original signed counterparts.

Cooperation and Drafting

84.     Each of the Parties has cooperated in the drafting and preparation of this Consent Decree; hence the drafting of this Consent Decree shall not be construed against any of the Parties.

Jurisdiction of the Court

85.     Any dispute regarding the interpretation or validity of or otherwise arising out of this Consent Decree, or relating to the Action or the Released Claims, shall be subject to the exclusive jurisdiction of the Court.   The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Consent Decree and all orders and judgments entered in connection therewith, and the Parties and their Counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Consent Decree and all orders and judgments entered in connection therewith.

Invalidity of Any Provision

86.     The Parties request that before declaring any provision of this Consent Decree invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents.

Plaintiffs' Waiver of Right to Object

87.     By signing this Consent Decree, the Plaintiffs agree to be bound by the terms herein and further agree not to object to any of the terms of this Consent Decree.   Any such objection shall therefore be void and of no force or effect.


**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Stipulation as of the date first set forth below.

**PLAINTIFF:** _____   Date: _____
Nathan Brooks

**PLAINTIFF:** _____   Date: _____
Larry Bartlett

**PLAINTIFF:** _____   Date: _____
Michael Lemieux

**PLAINTIFF:** _____   Date: _____
Edaurdo Arango

**PLAINTIFF:** _____   Date: _____
Radoslaw Rudski

**PLAINTIFF:** _____   Date: _____
Armand Gamache

**PLAINTIFFS'
COUNSEL:** _____   Date: _____
Jeffrey S. Morneau (BBO# 643668)
DONOHUE HYLAND & DONOHUE P.C.
1707 Northampton Street
Holyoke, MA 01014
Telephone:  413-536-1977

**PLAINTIFFS'
COUNSEL:** _____   Date: _____
Suzanne Garrow (BBO# 636548)
Thomas McCormick (BBO# 561760)
HEISLER, FELDMAN, MCCORMICK & GARROW, P.C.
1145 Main Street 01103
Springfield, MA 01014
Telephone:  413-788-7988

**DEFENDANT:** _____   Date: _____
Halsted Communications, LTD
Halsted Communications, LLC
By: Kirk Halsted, President


**DEFENDANT:** _____   Date: _____
Kirk Halsted


**DEFENDANTS'**
**COUNSEL:** _____   Date: _____
William J. Anthony (Pro Hac Vice)
Douglas J. Hoffman (BBO#  640472)
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
Telephone: 617-367-0025